UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| WILLIAM EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-00116-TWP-KMB |
| ) | |
| GREENWOOD MOTOR LINES, INC., ) | |
| R&L CARRIERS SHARED SERVICES, L.L.C., ) | |
| CLAUDE BROOKS, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

This matter is before the Court on a Partial Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Greenwood Motor Lines, Inc., R&L Carriers Shared Services, L.L.C. (together, "R&L Defendants"), and Claude Brooks ("Brooks") (collectively, "Defendants") (Filing No. 21). Plaintiff William Evans ("Evans") initiated this action after Brooks, operating a tractor-trailer owned by the R&L Defendants, struck the power line Evans was working on and Evans suffered serious bodily injuries. Evans alleges multiple state law negligence claims and seeks both compensatory and punitive damages. Defendants seek dismissal of certain claims and the dismissal of punitive damages liability. For the reasons explained below, the Partial Motion to Dismiss is **denied**.

### I.   BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Evans as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

On September 30, 2022, Brooks, while operating a commercial tractor-trailer owned by R&L on a rural residential roadway and navigating a sharp right-hand turn, struck the power line Evans was actively working on ([Filing No. 1](Filing No. 1) ¶ 30). After the initial impact, Brooks continued driving forward and pulled the electrical line along with the vehicle. *Id.* ¶ 33. As Brooks pulled the line forward it caused tension in the line, and the electrical pole where Evans was working snapped violently. *Id.* ¶ 34. After striking the electric line and continuing forward to a point of the force causing multiple solid wood electric poles to snap in half, Brooks left the scene of the incident and continued toward his destination in the R&L truck. *Id.* ¶ 35. Evans fell approximately twenty feet to the ground below. *Id.* ¶ 36. Evans was surrounded by downed, active electrical power lines which were damaged by the impact from Brooks' R&L vehicle. *Id.* ¶ 37. He was unable to receive medical attention for over twenty minutes until additional emergency personnel could arrive at the scene and disconnect the electricity. *Id.* ¶ 39.

Evans was fully conscious while waiting for safe extraction and experienced severe pain because of the fall. *Id.* ¶ 38. His injuries were life-threatening, and he had to be transported via air ambulance for care. *Id.* ¶ 41. He suffered permanent injuries and substantial damages that will require care and management for the rest of his life. *Id.* ¶ 42.

The R&L tractor-trailer was nearly as wide as the rural residential roadway at eight-feet wide, thirteen-feet tall, and seventy-feet long. *Id.* ¶¶ 19–21. The size of the commercial vehicle made it extremely difficult to navigate the rural residential roadway, including the sharp intersection near the accident. *Id.* ¶ 29. Evans and another crew member working on electrical line installation had activated the emergency warning equipment on their bright yellow bucket truck and parked it in a position to alert passing motorists and other traffic of the active electrical work being performed in the area. *Id.* ¶¶ 17–18.

The Complaint alleges the Defendants breached their duties of reasonable care. Brooks had a general duty to operate the R&L tractor in a safe and reasonable manner, including the duties to perform regular traffic and roadway checks; keep a proper lookout for other vehicles, pedestrians, and roadway hazards; not drive while distracted; appropriately manage the space to all sides and above the commercial truck; reduce speed and be cautious around road hazards; and properly signal to others to inform them of the tractor-trailer's position on the roadway. *Id.* ¶ 45. In addition, "at all times herein, Brooks was an agent, servant, employee and/or statutory employee of Defendant R+L and was at all times relevant acting within the purpose and scope of said agency and employment." *Id.* ¶ 6.

Evans alleges the R&L Defendants knew or should have known by exercising reasonable care about the risks associated with unsafe drivers, failing to train drivers, failing to have adequate risk management policies and procedures, improper dispatch and route planning, and failing to protect the public from these risks. *Id.* ¶ 46. At bottom, Evans alleges that the R&L Defendants had a role in preventing this incident by implementing policies, practices, and procedures regarding driver dispatch, routing, driver fitness, and distracted and fatigued driving. *Id.* ¶ 10.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A party seeking dismissal under Rule 12(b)(6)'s requirement that the complaint state a claim upon which relief can be granted bears a heavy burden. In making this determination, the court views the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the plaintiff. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint." *Sanjuan*

*v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "To withstand a Rule 12(b)(6) challenge . . . 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)) (emphasis in original).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.    DISCUSSION

Evans alleges four causes of action in his Complaint: Count I: Negligence/Gross Negligence against all Defendants; Count II: Negligence Per Se against all Defendants; Count III: *Respondeat Superior* against the R&L Defendants; and Count IV: Negligent Hiring, Training, Retention, and Supervision against the R&L Defendants. (Filing No. 1). He requests both compensatory and punitive damages against the Defendants. *Id.* at ¶ 77.

In their Partial Motion to Dismiss, Defendants ask the Court to dismiss Count I, Evans' gross negligence claim against all Defendants, and Count IV, the negligent hiring, training, retention, and supervision claim against the R&L Defendants, and to dismiss the request for punitive damages. (Filing No. 21). Defendants specifically argue that Evans failed to plead facts in support of his gross negligence claim, that the negligent hiring, training, retention, and supervision claim fails as a matter of law, and that the Complaint does not plead sufficient facts to support a request for punitive damages. The Court will address each argument in turn.

A.    **Claim for Gross Negligence (Count I in Part)**

Defendants argue that, at best, the allegations in Count I may support a claim for ordinary negligence, but none of Evans' allegations support a claim for gross negligence, and the allegations are wholly conclusory (Filing No. 22 at 5). Specifically, they argue that Evans does not clearly identify which specific duty was breached and he does not specify what tortious conduct might support a gross negligence claim. *Id.* at 6. Evans responds that the factual allegations and alleged breaches amount to gross negligence because of the knowing and intentional conduct leading up to and following the subject collision where Defendants "acted in reckless disregard to the life of the Plaintiff." (Filing No. 25 at 6). He contends that his specific allegations concerning the routing and dispatching of the truck, the lack of training and implementation of safety policies, coupled

5

with the actions of Brooks leading up to and following the collision, including leaving the scene, meet his pleading requirements for gross negligence. *Id.* The Court agrees.

The Indiana Supreme Court has defined "gross negligence" as a "conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (omission in original) (quoting Black's Law Dictionary 1057 (7th ed. 1999)); *see Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988). For gross negligence, the duty owed does not change but "the level of conduct amounting to a breach of that duty is quite different." *N. Ind. Pub. Serv. Co.*, 790 N.E.2d at 465.

The Complaint accuses the Defendants of breaching the duty of reasonable care and specifies the duties Brooks had to operate the R&L vehicle in a safe and reasonable manner (Filing No. 1 ¶¶ 44–45). Evans alleges the Defendants neglected to eliminate risks associated with unsafe drivers, failed to train drivers to obey the Federal Motor Carrier Safety Regulations, failed to have adequate risk management policies and procedures, and had improper dispatch and route planning for its fleet of tractor-trailers and drivers. *Id.* at ¶ 46. The Complaint also alleges the Defendants failed to have policies and procedures in place to identify fatigued, unsafe, or undertrained drivers; and failed to protect the members of the public, such as Evans, from known risks. *Id.* Evans alleges that the point of impact with the power line was only twenty feet from his bright yellow truck and accompanying line trailer with emergency warning equipment activated. *Id.* ¶ 31. Evans further asserts that "after striking the electric line and continuing forward to a point of the force causing multiple solid wood electric poles to snap in half, Brooks left the scene of the incident and continued toward his destination in the R+L truck." *Id.* at ¶ 35.

Accepting all well-pleaded factual allegations as true, the Court finds that Evans has properly stated a claim for gross negligence by alleging the Defendants engaged in conscious,

6

voluntary acts or omissions in reckless disregard of the consequences to Evans. The Court therefore **denies** Defendants' Partial Motion to Dismiss as to Evans' claim for gross negligence.

B.    **Negligent Hiring, Training, Retention, and Supervision (Count IV)**

Next, Defendants argue that, because the Complaint alleges that Brooks was acting in the course and scope of his employment when the accident occurred, there can be no independent claim against the R&L Defendants for negligent hiring, retention, or supervision under Indiana law ([Filing No. 22 at 7](#)).  Indiana law recognizes the tort of negligent hiring, training, retention, and supervision. *Branscomb v. Wal-Mart Stores E., L.P.*, 165 N.E.3d 982, 985 (Ind. 2021); *see also Hayden v. Franciscan Alliance, Inc.*, 131 N.E. 685, 693 (Ind. Ct. App. 2019). And, such a claim is properly brought directly against an employer. *Branscomb*, 165 N.E.3d at 985.

"[W]hen an employer admits that an employee was acting within the course and scope of his or her employment, absent special circumstances, negligent hiring claims are precluded." *Sedam*, 84 N.E.3d at 1179. But Courts need not dismiss negligent hiring claims when the employee was acting within the scope of their employment under "special circumstances," such as when a plaintiff seeks punitive damages. *Id.* at 1177 n.3 (citing *Lange v. B & P Motor Exp., Inc.*, 257 F. Supp. 319, 323 (N.D. Ind. 1966); *Tindall*, 320 N.E.2d at 768). Thus, "where punitive damages are at issue, the general rule requiring dismissal of a negligent hiring claim is not necessarily required." *Finn v. Nelson*, No. 2:18 CV 283, 2020 U.S. Dist. LEXIS 107354, at *1 (N.D. Ind. June 18, 2020).

Because Evans is pursuing punitive damages, the general rule requiring dismissal does not apply and the Court is not required to bar the negligent hiring, training, retention, and supervision claim. While, ultimately, Evans will not be permitted a double recovery, the jury is entitled to decide how and to what extent it wishes to hold Defendants liable. *Finn*, 2020 U.S. Dist. LEXIS 107354, at *1 (citing *Sedam*, 84 N.E.3d at 1178). Defendants' motion as to the negligent hiring claim is **denied**.

C.     **<u>Punitive Damages</u>**

Last, Defendants seek the dismissal of Evans' request for punitive damages, arguing that the factual allegations of purported negligence do not articulate a plausible basis for Evans to request punitive damages against Brooks (Filing No. 22 at 8–9). They also argue that Indiana Law does not impose punitive damages against an employer strictly on the basis of *respondeat superior*, thus the request for punitive damages against the R&L Defendants should be dismissed. *Id.*

Under Indiana law, "[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.'" *Williams v. Younginer*, 851 N.E.2d 351, 358 (Ind. Ct. App. 2006) (quoting *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 520 (Ind. 1993)); *see also*, *e.g.*, *Hi-Tec Props., LLC v. Murphy*, 14 N.E.3d 767, 778 (Ind. Ct. App. 2014); *Westray v. Wright*, 834 N.E.2d 173, 180 (Ind. Ct. App. 2005) (citing *Bud Wolf Chevrolet, Inc.* 519 N.E.2d at 137) (confirming gross negligence is a proper basis for an award of punitive damages). Said differently, "[i]n tort actions, 'punitive damages may be awarded upon a showing of willful and wanton misconduct' such that the defendant subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 523–24 (Ind. 2014) (internal quotations and citations omitted).

Drawing the reasonable inference that the Defendants are liable for the misconduct alleged, the Court holds that the allegations in the Complaint support a punitive damages award against Brooks. The allegations that Brooks struck the electric line causing the poles to snap in half, left the scene and continued toward his destination—combined with other allegations of negligent vehicle operation, routing, and training—plausibly supports the conclusion that Brooks

consciously disregarded an impending danger. Such misconduct can certainly be characterized as heedless indifference, and the punitive damages request against Brooks survives dismissal.

With respect to the R&L Defendants, "punitive damages are available for negligent hiring claims, but not typically [for] negligence claims hinging on the doctrine of respondeat superior." *Finn*, 2020 U.S. Dist. LEXIS 107354, at *1; *see also Est. of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 261 (Ind. Ct. App. 2013) (Punitive "damages should not be imposed against a corporation *strictly* on the basis of respondeat superior of an employee's misconduct.") (emphasis added). Thus, "[i]n order to award punitive damages against the employer, there must be evidence of positive or collusive action by the employer" such as "prior authorization of the doing and the manner of the agent's act" or "that the agent was unfit, and the employer was reckless in employing and/or retaining the agent." *Est. of Mayer*, 998 N.E.2d at 261.

Defendants are correct that punitive damages should not be imposed *strictly* on the basis of *respondeat superior* and finds that *Lengacher* is instructive. *Lengacher v. Wayne*, No. 3:23-cv-547, 2024 U.S. Dist. LEXIS 30343 (N.D. Ind. Feb. 22, 2024). In that case, the court allowed a request for punitive damages to proceed against the driver but not against the trucking company because there were no allegations that the company consciously disregarded knowledge that the driver or his vehicle were a danger to others on the road. In *Lengacher*, the court held,

> Although the complaint alleges that [the employer's] drivers were deemed out of service at a rate over three times the national average, it says nothing of [the employee-driver's] history of being deemed out of service (whether he fits within or without this statistic), nor anything about any previous accidents, traffic violations, performance issues, or discipline by the company. It says nothing about any issues with the semi. No facts support a plausible conclusion that [the employer] consciously disregarded knowledge that [the employee-driver] or his vehicle were a danger to others on the road so as to support punitive damages.

*Lengacher* at *9. Here, Defendants argue similarly that Evans failed to plead facts to support positive action by the R&L Defendants (Filing No. 22 at 9).

9

While the Court agrees with Defendants that punitive damages should not be imposed *strictly* on the basis of *respondeat superior*, the Court does not find *Lengacher* instructive here. *Lengacher v. Wayne*, No. 3:23-cv-547, 2024 U.S. Dist. LEXIS 30343 (N.D. Ind. Feb. 22, 2024). In that case, the court allowed a request for punitive damages to proceed against the driver but not against the trucking company because there were no allegations that the company consciously disregarded knowledge that the driver or his vehicle were a danger to others on the road. Defendants argue similarly, here, Mr. Evans failed to plead facts to support positive action by the R&L Defendants (Filing No. 22 at 9). However, here, the Complaint alleges the R&L Defendants' prior authorization of the doing and the manner of the agent's act (e.g., driver dispatch, routing, and training) and that the R&L Defendants recklessly hired and retained unfit drivers (Filing No. 1 ¶¶ 10, 46, 70–73). There are sufficient allegations of positive or collusive action beyond *respondeat superior* to state a plausible punitive damages claim against the R&L Defendants.

Whether Mr. Evans "ultimately adduces clear and convincing evidence establishing the propriety of punitive damages remains to be seen, but the [] Complaint sufficiently preserves that possibility." *LeBlanc v. Sikander Singh*, No. 1:24-cv-00838, 2025 U.S. Dist. LEXIS 42456 (Ind. S.D March 10, 2025). The motion as to the request for punitive damages is **denied**.

### IV. CONCLUSION

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the reasons discussed above, the Defendants Partial Motion to Dismiss (Filing No. 21), is **DENIED**. These claims have survived the initial hurdle of a motion to dismiss. Whether they can survive a summary judgment motion—especially the request for punitive damages—is a question for another day.

**SO ORDERED.**

Date: 9/2/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Terry E. Goodspeed
Aguiar Injury Lawyers
terry@kylawoffice.com

Jonathan B. Hollan
Sam Aguiar Injury Lawyers
jhollan@kylawoffice.com

Edward M. O'Brien
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
edward.obrien@wilsonelser.com

Jonathon Trey Shoemaker
Wilson Elser Moskowitz Edelman & Dicker, LLP
trey.shoemaker@wilsonelser.com